(49 South. 655.)

No. 17,340.

SMITH v. HUIE-HODGE LUMBER CO., Limited.

(April 26, 1909. Rehearing Denied June 19, 1909.)

1. LOGS AND LOGGING (§ 3*)—STANDING TIMBER—SALE.

    Where by written contract the owner declares that he sells and delivers, for a price paid in cash, all the merchantable pine timber on a certain described tract of land, the contract is one of sale.

    [Ed. Note.—For other cases, see Logs and Logging, Dec. Dig. § 3.*]

2. LOGS AND LOGGING (§ 3*)—SALE OF STANDING TIMBER—LESION BEYOND MOIETY.

    Under Act No. 188, p. 420, of 1904, taken in connection with the pre-existing law, the sale of standing timber, though made with a view to its separation from the land, is the sale of an immovable, and as such is open to attack for lesion beyond moiety.

    [Ed. Note.—For other cases, see Logs and Logging, Dec. Dig. § 3.*]

(Syllabus by the Court.)

Appeal from Third Judicial District Court, Parish of Bienville; James Edward Moore, Judge.

Action by Nannie Smith against the Huie-Hodge Lumber Company, Limited. Judgment for defendant, and plaintiff appeals. Reversed and remanded.

Dormon & Reynolds, for appellant. Barksdale & Barksdale (William Upshur Richardson, of counsel), for appellee. Thomas Jones Kernan, amicus curiæ on application for rehearing.

MONROE, J. Plaintiff, who brought this suit in January, 1908, alleges that in December, 1904, she sold to defendant the merchantable pine timber on a certain tract of land for $600 cash, and that it was then worth $5,500. Wherefore she prays that the sale be annulled for lesion beyond moiety. Defendant answered, alleging that the petition discloses no cause of action, denying that the price was less than the value of the rights acquired, and praying that plaintiff's demand be rejected. Defendant subsequently set up the plea of no cause of action, by way of exception, and as such it was maintained, and the suit dismissed. Plaintiff has appealed.

Defendant's counsel argue that the alleged sale was merely a license to enter upon the land and cut the merchantable pine timber thereon; no time within which the cutting

should be done being specified. They further argue that the law authorizing the rescission of sales for lesion beyond moiety is ex vi terminorum confined in its application to immovable property, to the exclusion of the produce of such property, and hence has no application in the case of a sale of standing timber. The contract in question reads, so far as it need be quoted, as follows:

"This indenture, made this 23d day of December, 1904, by and between Mrs. Nannie Smith, party of the first part, and the Huie-Hodge Lumber Company, Limited, party of the second part, witnesseth: That said party of the first part, being the owner in fee simple and in possession of the following lands, * * * for and in consideration of the sum of $600 to her in hand paid by the party of the second part, the receipt of which is hereby acknowledged, has this day granted, sold, transferred, and delivered, unto the party of the second part all the merchantable pine timber on the above described land, with the exclusive right to build and operate railroad tram roads for the purpose of removing said timber and enough of the smaller timber of (for) skid poles."
"[Signed]                    Nannie Smith."

1. We find nothing in our law or jurisprudence which would justify us in holding that the instrument thus quoted does not evidence a contract of sale.

It declares that the owner gives a thing for a price in money, and that "the other gives the price in order to have the thing itself"; and, as the "thing" which is the subject of the contract is the whole of the "merchantable pine timber" on certain described tracts of land, which the owner gives for an agreed price paid in cash, there is no question of "tale" or "measure," but the contract is governed by Civ. Code, art. 2459, which provides that, "if * * * objects have been sold in a lump, the sale is perfect, though these objects may not have been weighed, counted, or measured," and Civ. Code, art. 1920, which reads:

"The rule, that the obligation to deliver a determinate object is perfect by the mere consent of the parties, and that the obligee is the owner from the time of the said contract, is without any exception as respects immovables, not only

between the parties but as to all the world; provided the contract be clothed with the formalities required by law, that it is bona fide, and purports to transfer the ownership of the property."

Contracts for the sale of standing timber, with varying stipulations as to price and as to the time in which the timber should be removed, have more than once been held by this court to be sales. Lumber Co. v. Sheriff, 106 La. 414, 30 South. 902; Shepherd v. Davis Bros. Lumber Co., 121 La. 1011, 46 South. 999; Lee Lumber Co. v. Hotard, 122 La. 850, 48 South. 286; Kent v. Davis Bros. Lumber Co., 122 La. 1046, 48 South. 451.

In the case of St. Louis Cypress Co. v. Thibodaux, 120 La. 834, 45 South. 742, the contract was held to be a sale of only so much of the timber on a certain tract as the purchaser should remove within a certain time, but neither upon the original hearing nor the rehearing was it intimated that there was no sale.

2. The Civil Code (article 2589) provides that, if the vendor be aggrieved for more than half the value of an immovable estate, he may demand the rescission of the sale; that (article 465) standing crops and the fruits of trees not gathered, and trees before they are cut down, are immovables; that (article 468) cattle, intended for cultivation, implements of husbandry, seeds, plants, fodder, and manure, pigeons in pigeon houses, beehives, mills, kettles, alembics, vats, and other machinery, made use of in carrying on plantation works, which have been placed by the owner for the service and improvement of a tract of land, and all such movables as the owner has attached permanently to the tenement or building, are immovables by destination; that (article 1862) "lesion can be alleged by persons of full age, in no other sale than one for (of) immovables, in which is included whatever is immovable by destination"; and that (article 2594) "rescis-

123 La.—31

sion for lesion * * * is not granted against sales of movables and produce. * * *"

The French writers, construing article 1674 of the Code Napoléon (which is practically identical with article 2589 of our Code), hold that, where standing timber is sold, in order to be separated from the soil (coupe de bois), it is a sale of movable property, and is not subject to attack for lesion. Baudry-Lacontinerie, Traité de Droite Civil, vol. 12, pp. 607, 608; Troplong, de la Vente, § 789. And we should be disposed to adopt that view, were it not that, in addition to the provisions of the Civil Code which have been mentioned, we are confronted with Act No. 188, p. 420 of 1904, which provides:

"That standing timber shall remain an immovable, and be subject to all the laws of the state on the subject of immovables, even when separated, in ownership, from the land on which it stands; provided, that nothing in this act shall be construed as altering, affecting, or modifying existing laws relative to the assessment and taxation of such timber."

Adding this to the pre-existing law, and, so far as standing timber is concerned, there is no room for the application of the theory of the French commentators that, when property, which, under varying conditions, may be treated either as movable or immovable, is dealt with as movable, the contract concerning it is to be regarded as a contract relating to movable property, and is not open to attack for lesion. Under the act above quoted, so long as timber remains standing, it "shall remain an immovable and be subject to all the laws of the state on the subject of immovables." The sale of such timber, even though made with a view to its separation from the land, is, therefore, open to attack for lesion.

The judgment appealed from is, accordingly, set aside, and the case is remanded for further proceedings in accordance with the views herein expressed; plaintiff to pay the costs of the appeal, and the costs of the district court to await the final judgment.